## Brotherhood of Railroad Trainmen v. Powers.
(Decided Oct. 22, 1935.)

STEPHENS & STEELY and GRAY & FEATHER for appellant.
H. H. OWENS and J. B. JOHNSON for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellee, Starling E. Powers, sued the appellant upon a class G certificate of insurance for $5,000, alleging total and permanent disability, and recovered judgment for that sum. Proofs had been filed and claim made for indemnity or allowance under section

70 of the constitution of the brotherhood, and the suit originally sought recovery under that section, the pleadings were extended, and in one of the amended petitions it was alleged that the plaintiff had suffered the complete loss of sight of both eyes, which is a condition stated in section 68 of the constitution as giving the holder of the certificate an enforceable and legal right to recover its face value. We have heretofore had occasion to copy and to define the extent and limitations of these two respective sections of the brotherhood's certificate of insurance. Fowler v. Brotherhood of Railroad Trainmen, 252 Ky. 786, 70 S. W. (2d) 669; Brotherhood of Railroad Trainmen v. Martin, 256 Ky. 436, 76 S. W. (2d) 269; Brotherhood of Railroad Trainmen v. Taylor, 256 Ky. 566, 76 S. W. (2d) 611; Brotherhood of Railroad Trainmen v. Woods, 256 Ky. 613, 76 S. W. (2d) 911; Brotherhood of Railroad Trainmen v. Wilkins, 257 Ky. 331, 78 S. W. (2d) 6.

We go straight to the question of a directed verdict, so other points made in brief are eliminated, even as several special pleas have passed out through apparent concession. So much of section 68 as is pertinent here is:

"Any beneficiary member in good standing who * * * shall suffer the complete and permanent loss of sight of both eyes * * * shall be considered totally and permanently disabled, but not otherwise, and shall thereby be entitled to receive * * * the full amount of his beneficiary certificate."

It is conceded that Powers was and is totally and permanently disabled from continuing in his occupation and employment as a railroad brakeman, not only on account of partial paralysis, but because of greatly impaired vision in both eyes. He maintains that this provision of section 68 must be considered in accordance with the definitions of "total and permanent disability" contained in group and regular insurance policies for such misfortune; that is, that it is to be construed as inability to perform all of the substantial duties and labors of the insured's occupation when and if it is due to the loss of sight in both eyes or any of the other stipulated ways. See Prudential Insurance Co. v. Harris, 254 Ky. 23, 70 S. W. (2d) 949. This contract is different in a material respect. It simply provides indemnity in case one holding such a certificate of insur-

ance shall suffer any of the losses specifically eumerated or when he shall become 70 years of age, and only declares that he shall then be considered as totally and permanently disabled, but not otherwise. Hence legal and enforceable liability of the brotherhood is dependent upon proof that the member's loss comes within the restricted terms of the coverage. It is not sufficient merely to establish total and permanent disability, either occupational or general. If the condition has arisen from causes other than those specified, relief or a donation must be asked under section 70, the allowance of which is wholly within the discretion of the tribunals of the fraternity. Grand Lodge, Brotherhood of Railroad Trainmen v. Nolan, 196 Ky. 296, 244 S. W. 759; Holcomb v. Grand Lodge, B. R. T., 171 Ky. 843, 188 S. W. 885, L. R. A. 1917B, 107; Fowler v. Brotherhood of Trainmen, supra; Brotherhood of Railroad Trainmen v. Taylor, supra; Brotherhood of Railroad Trainmen v. Wilkins, supra; Kane v. Brotherhood of Railroad Trainmen, 102 Neb. 645, 168 N. W. 598, L. R. A. 1918F, 1037; Grand Lodge, B. R. T., v. Smith, 129 Miss. 738, 92 So. 837, 27 A. L. R. 863.

The supplementary point is made that appellee is shown to have suffered the practical or substantial loss of sight in both eyes, and that the loss of the use of his eyes because of that condition is "the complete and permanent loss of sight," as we have held in Continental Casualty Co. v. Linn, 226 Ky. 328, 10 S. W. (2d) 1079. Such must be the interpretation of this provision, for a strictly literal meaning cannot be ascribed. The same degree of blindness here would entitle the insured to recover, for it cannot be said that he must have become stone blind. Brotherhood of Railroad Trainmen v. Britton (Tex. Civ. App.) 292 S. W. 286. The question, therefore, is whether or not the evidence in its most favorable aspect shows such condition.

In the latter part of 1931 and early in 1932, Powers was stricken with cerebral apoplexy, resulting in partial paralysis of his right side, and seriously affecting his eyesight. Because of his disability, he was necessarily discharged by the railroad company. However, his vision was sufficient to permit him to write several letters to the brotherhood with reference to his condition and follow the lines of his stationery pretty well. On the trial he was able to identify what he had written

and to read the letters at a distance of twelve or fourteen inches, but apparently with some difficulty. This, however, may have been due to a degree of illiteracy. Yet he was able to read them without glasses, or with his wife's glasses. His ability to recognize friends, he testified, depended upon the light and distance. He was able to identify several members of the jury from the witness stand. Several doctors, none of whom was an eye specialist, however, had examined him since his disability began and had given him the Snellen, or card vision, test. All of them pronounced him as being "commercially blind"; that is, not able to work at his vocation. Two of the physicians testified that his vision was two-thirds impaired, that is, that he had one-third of normal sight; and an optometrist who had examined him in January and again in February, 1934 (which was after he had ceased to be a member of the brotherhood), found him on the first occasion to have a vision of 70 per cent. to 75 per cent. normal, and on the last between 50 per cent. and 60 per cent. Powers had not secured any glasses, but had found those of his wife helpful. The doctors seemed to agree, however, that glasses would not be of much aid. This is the evidence of the plaintiff. The evidence introduced by the defendant tended to minimize the degree of impaired vision by showing Powers' ability to get about and to read and recognize friends at some distance.

We cannot regard this evidence as showing an impairment equivalent to the complete loss of eyesight within the meaning of his contract. We have two close precedents in the Holcomb and Taylor Cases, supra. Both men were railroad brakemen, and each had suffered such impairment of vision as prevented him from continuing in his employment. Holcomb's condition was strikingly like that of the appellee's. Taylor's general physical, and particularly his eye, condition was not quite as aggravated. It was held neither could recover.

Finally, it is insisted by the appellee that, even though he should not be entitled to recover under section 68, and notwithstanding the interpretation by this and other courts that section 70 gives no right enforceable in law, yet he is entitled to recover the so-called benevolence by virtue of his membership in the organization; that there can be no arbitrary denial or unfair

discrimination in the distribution of the fraternity's benevolent funds. Perhaps some of the criticisms of the brotherhood in rejecting the claim in this particular case are not without justification. Outside the law may be inside the right. But it must be remembered that for the fees paid the brotherhood the member had not only the restricted absolute accident and age insurance, but life insurance and other benefits arising from his membership in the labor union and secret fraternity. His certificate is clear that the allowance of claims under section 70 is discretionary, and the granting of aid to an unfortunate brother is a matter of benevolence. As stated in Brotherhood of Railroad Trainmen v. Martin, supra (where there was also a seemingly meritorious request for aid), resort must be had to the brotherhood's tribunals exclusively, although the member would be entitled at least to show in the courts that he had been refused a fair, reasonable, and impartial hearing or that the rejection of his claim was arbitrary or fraudulent.

Our conclusion that the plaintiff failed to make out a case under his contract of insurance, and therefore that the defendant's motion for a peremptory instruction should have been sustained, makes the consideration of other questions unnecessary.

Judgment reversed.