**Judith D. WEATHERSBY, Appellant,**

v.

**MacGREGOR MEDICAL ASSOCIATION and Dr. Rex M. Crago, Appellees.**

No. 14–97–00384–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 25, 1998.

---

**3.** See Footnote No. 1.

84

Thomas B. Tody Dupont, Kay I. Kurtin, Houston, for appellant.

Sherie M. Beckman, Houston, Edward M. Lavin, San Antonio, for appellees.

Before Justices LEE, AMIDEI, and FOWLER.

## OPINION

WANDA McKEE FOWLER, Justice.

This is an appeal from a summary judgment granted in favor of the appellees, Dr. Rex M. Crago ("Dr.Crago") and MacGregor Medical Association ("MacGregor"). Appellant, Judith Weathersby ("Weathersby") sued Dr. Crago and MacGregor to recover damages for injuries she claims she sustained as a result of Dr. Crago's and MacGregor's alleged negligence during her post-hire physical examination. We affirm the trial court judgment.

## BACKGROUND

Dr. Crago was employed by MacGregor, a professional association of physicians. MacGregor had a contract with ACS Industries, Inc. ("ACS") to perform the company's post-hire employee examinations. ACS hired Weathersby and subsequently sent her to Dr. Crago for a physical examination. Dr. Crago evaluated Weathersby's eyes, lungs, heart, extremities, blood pressure, pulse rate, and respiratory rate and strength as indicated by her employer. Additionally, Dr. Crago administered a Dynatron test to Weathersby to determine her physical strength. The Dynatron test requires the patient to pull upward on a stationary bar while the machine determines the patient's strength. During the test, Weathersby strained her back.

Dr. Crago has administered the Dynatron test to hundreds of patients at MacGregor during the three years preceding Weathersby's examination. No one had been injured while performing the test. In the three years since Weathersby's accident, Dr. Crago administered the Dynatron test to hundreds more patients, and none of them were injured while taking the test. Before administering the test to Weathersby, Dr. Crago inspected her to assess health problems indicating danger. He found none. Weathersby was otherwise healthy and had no history of back problems.

Weathersby sued Dr. Crago and MacGregor alleging that Dr. Crago was negligent in administering the Dynatron test to her. MacGregor and Dr. Crago moved for summary judgment alleging that the suit was for medical negligence. They claimed Weathersby had to prove (1) a duty, (2) that Dr. Crago failed to meet the standard of care, (3) that she was injured, and (4) that the injury was proximately caused by Dr. Crago's negligence. Crago and MacGregor claimed that its evidence proved that Dr. Crago met the standard of care, that he owed no duty and that he did not cause Weathersby's injuries. Weathersby responded that her claim was not for medical malpractice but for simple negligence.

After the trial court granted Dr. Crago and MacGregor's motion for summary judgment, Weathersby appealed on two points of error: (1) the trial court erred in granting the motion for summary judgment and (2) the trial court erred in denying the appellant's motion for new trial.

## STANDARD OF REVIEW

A defendant prevails on a motion for summary judgment if she can establish with competent proof that, as a matter of law, there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *See* TEX. R. CIV. P. 166a(c); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). If the defendant bases her motion for summary judgment on an affirmative defense, she must prove all the elements of such a defense as a matter of law. *See Montgomery v. Kennedy,* 669

S.W.2d 309, 310–11 (Tex.1984). Once the movant establishes a right to summary judgment, the non-movant must expressly present any reasons avoiding the movant's entitlement, and must support the response with summary judgment proof to establish a fact issue. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 907 (Tex.1982); *Cummings v. HCA Health Serv. of Texas*, 799 S.W.2d 403, 405 (Tex.App.—Houston [14th Dist.] 1990, no writ).

The standards an appellate court employs to review summary judgment proof are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *see Karl v. Oaks Minor Emergency Clinic*, 826 S.W.2d 791, 794 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

## ANALYSIS

■ In her first point of error, Weathersby contends the trial court erred in granting the motion for summary judgment filed by MacGregor and Dr. Crago. In her second point of error, Weathersby contends that the trial court erred in denying her motion for new trial. Weathersby reurges her arguments made at trial, asserting that, although this suit is against a health care professional and a professional health care association,

this is a case of ordinary negligence. As she did below, Weathersby contends that the motion for summary judgment was erroneously granted because the motion addressed a medical malpractice claim rather than a claim of ordinary negligence. Her claim is that Dr. Crago owed her a duty not to negligently injure her. MacGregor and Dr. Crago respond that, regardless of whether Weathersby's claim is one for negligence or medical malpractice,[1] their motion for summary judgment negated at least one element of Weathersby's claim: duty and proximate cause.[2] As we explain below, we agree with MacGregor and Dr. Crago that—regardless of whether the claim is one for simple negligence or medical malpractice—Weathersby failed to create a fact issue on proximate cause.

## PROXIMATE CAUSE

■ Ms. Weathersby's claim is that Dr. Crago acted negligently when he administered the Dynatron test to her and that she suffered a compression fracture in her spine when she performed the test. According to Ms. Weathersby, the Dynatron test caused her injury. Proximate cause is a required element for ordinary, as well as medical, negligence. *See El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987) (stating that the common law doctrine of negligence requires proof of proximate cause of damages); *Hart v. Van Zandt*, 399 S.W.2d 791, 797 (Tex.1965) (stating that proof of medical negligence requires proof that the defendant's actions were the proximate cause of the patient's injuries). Proximate cause consists of two necessary components, cause in fact and foreseeability. *See Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). "Cause in fact" means that the act or omission was a substantial factor in

1. This claim falls squarely within the Medical Liability and Insurance Improvement Act. MacGregor and Dr. Crago claim that the statute was referenced, citing us to one of their replies to the opposition to summary judgment. We have looked at the document and the reference is insufficient. The statute is not specifically mentioned, and otherwise, the reference is too oblique to have put Weathersby on notice that MacGregor and Dr. Crago were relying on the

statute. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 340–41 (Tex.1993). Consequently, we are not going to apply the act to the claim.

2. MacGregor and Dr. Crago also claimed that they negated duty. We do not need to address that argument since we conclude that the motion negated proximate cause.

bringing about the injury, and without it harm would not have occurred. *See Union Pump Co.*, 898 S.W.2d at 775. "Foreseeability" means that the actor should have anticipated the dangers that his negligent act created for others. *See Travis*, 830 S.W.2d at 98.

## CAUSE–IN–FACT

■ Weathersby claimed that Dr. Crago proximately cause her injury—a compression fracture in her back. But, Dr. Crago testified that his actions did not cause her injuries. Here is what he said on the issue.

I have reviewed the medical questionnaire attached to my affidavit as 'Attachment 1.' This document is a record of Judith Weathersby's medical history and conditions made on the day of her physical examination, created from information transmitted by Judith Weathersby, who has knowledge of the facts stated therein. This record was kept in the course of the regularly conducted business activity of MacGregor Medical Association, which makes a regular practice of making such records.

I have reviewed the Plaintiff's Original Petition and the Original Petition in Intervention of the Texas Worker's Compensation Insurance Fund in this case, and the allegations against me and MacGregor Medical Association, all of which I deny. As detailed above, I fully complied with the applicable standard of care. Based upon my review of the attached document and my knowledge of Judith Weathersby's past and current medical conditions, her alleged injuries resulted from complications which developed independent of my treatment of her. My treatment did not cause or contribute to any of her alleged injuries or damage.

■ Defendants also claimed the record showed that Dr. Crago x-rayed Ms. Weathersby the day after the incident and the x-ray did not reveal a compression fracture. Dr. Crago diagnosed her as having a muscle spasm. This information was in Ms. Weathersby's interrogatories, and therefore, part of the court file, but, they were not part of the summary judgment evidence. For them to

have been part of the evidence, Dr. Crago and MacGregor would had to have referenced them or set them forth in the motion. *See* TEX.R. CIV. P. 166a(c). Dr. Crago and MacGregor did not do this. As a result, we are left with only the rather brief statements of Dr. Crago. As brief as the statements are, they are sufficient.

A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

*Id.* The testimony on causation was uncontroverted. It was clear, positive and direct, free of contradictions and inconsistencies, and capable of being controverted. Finally, the origin of Ms. Weathersby's injury was a topic on which the jury would need to hear expert testimony. We conclude MacGregor and Dr. Crago successfully negated cause in fact.

■ In addition, as we discuss below, MacGregor and Dr. Crago also successfully negated the foreseeability prong of proximate cause. Here, again, we refer to Dr. Crago's affidavit. On this issue, the affidavit contained more testimony.

The Dynatron strength test is safe and appropriate for persons like Judith Weathersby who present with good health and no history of back problems. The test is performed by having the patient pull upwards on a horizontal bar connected to the Dynatron machine with a strap. The machine itself exerts no force on the patient (unlike lifting weights, for example). Rather, the entire exercise is isometric, meaning that the patient exerts her own force on the bar, but the bar itself does not move. The Dynatron machine simply measures the amount of force which the patient is exerting by pulling upon the bar.

. . . .

I had administered the Dynatron test for three years prior to Judith Weathersby's examination, and not one person out of the several hundred who took the test had ever injured themselves in performing the test. Likewise, in the three years

following Judith Weathersby's examination, hundreds more examinees have taken the Dynatron test, and not one has been injured while performing the Dynatron test.

. . . .

. . . Furthermore, because no injury had ever occurred at MacGregor after several hundred Dynatron tests, because Judith Weathersby had no history of back trouble and appeared healthy in all respects, and because the Dynatron machine is passive, exerting no pressure on the examinee but only measuring the force which the examinee exerts on the machine, Judith Weathersby's back strain was not reasonably foreseeable.

This testimony proved that an injury was not foreseeable. Once Dr. Crago proved this point, Ms. Weathersby had to respond with a controverting affidavit. *See* TEX.R. CIV. P. 166a(c). She did not. Consequently, MacGregor and Dr. Crago successfully negated the foreseeability prong of proximate cause.

In sum, we conclude the summary judgment was properly granted because MacGregor and Dr. Crago negated the proximate cause element of Ms. Weathersby's cause of action. Therefore, we overrule both of Ms. Weathersby's points of error and affirm the trial court judgment.